BALEN *v.* BURGESON.

1. VENDOR AND PURCHASER — LAND CONTRACTS — FORECLOSURE — EVIDENCE.

On proceedings to foreclose a land contract, the execution of which defendant denied, evidence examined, and *held*, to sustain a decree for complainants.

2. DEEDS—FRAUD—EVIDENCE.

Where defendant claimed fraud in the execution of a deed, but admitted that he discovered the alleged fraud before leaving complainant's office, and never took any steps to have it canceled, and continued on friendly terms with complainant, the defense is too improbable to overcome the record evidence of the validity of the deed, and the decree of the lower court sustaining its validity will be affirmed.

Appeal from Bay; Collins, J. Submitted November 11, 1914. (Docket No. 3.) Decided September 28, 1915.

Bill by James D. Balen and another against Andrew S. Burgeson for the foreclosure of a land contract. From a decree for complainants, defendant appeals. Affirmed.

*Cooley & Hewitt,* for complainants.

*Joslyn & Houghton,* for defendant.

BIRD, J. The purpose of beginning this proceeding was the foreclosure of a land contract against certain premises in the possession of defendant. The chancellor granted the relief prayed for, and defendant has appealed.

The case made by complainant was that in 1890, and for some time prior thereto, defendant had title to 100 acres of land in Bay county; that he gave to complainant three mortgages thereon, two in 1890 and one in 1892, for an aggregate amount of $1,025; that in May, 1895, the amount due on said mortgages was somewhat in excess of $1,200; that for some reason, which does not clearly appear, at that time the defendant and his wife conveyed the title of the premises to complainant; that complainant gave defendant permission to remain thereon, and further he agreed to give to defendant all he could realize on a sale of the premises over and above the indebtedness; that in 1901 defendant represented to complainant that he had a prospect of selling the premises, and that he could deal with them better if he had a contract of purchase. Accordingly one was executed. In this condition, matters drifted along from year to year, with no payments thereon, save two small items of interest. Complainant appears to have relied on defendant's promises, made from time to time, that

he would make payments thereon, and that he would make a sale of the premises.

Defendant admits that he had title to said premises, and that he gave the three mortgages thereon to complainant, but insists that the aggregate amount thereof was only $800; that in 1895, he agreed to convey the 60 acres only in payment of the mortgage indebtedness; that he did so, and it is his claim that, after he had examined the deed and gone after his wife, the description of the 40 acres was inserted in the deed. He denies executing the land contract, but admits that he signed it. He explains that he was passing complainant's office, and was invited in to witness a paper, and supposed he was signing as a witness. He concedes that he has never paid the $800, or any part thereof, but claims title to the entire 100 acres.

Aside from the record evidence of the deed and land contract, the case must turn upon the testimony of the parties. Defendant's testimony is in such serious collision with the record and oral evidence, and in some respects is so inherently weak, that we find difficulty in giving it sufficient credence to meet the case made by complainant. Defendant concedes that he borrowed $800 of complainant, and that he has never repaid it, or any part thereof. He says that, soon after he and his wife executed the deed, while still in complainant's office, he discovered that it contained the 40 acres, and that he protested to complainant that that was not the agreement, and was not to be included therein, and that complainant snatched the deed out of his hands and kept it. Notwithstanding this great injustice, he has never taken any steps to have it canceled, but afterwards became more or less friendly with complainant, and on many occasions visited his office. True, he says that the object of some of his visits was a release of the 40 acres; but it seems incredible that

he should have been patient enough to wait nearly 20 years to have the outrage righted, when it involved all or nearly all he possessed. If the incident regarding the deed were true, it would have made them bad friends, and it seems to me improbable that the complainant would have invited him in, or that he would have gone into complainant's office as he was passing, to witness a land contract involving the very premises, a part of which had been taken from him by force and fraud. The payment of the taxes also tends to show in which direction the truth lies. After the deed was made, complainant paid the taxes until 1901, when the contract was made, providing that defendant should pay them. After that, defendant paid the taxes. Defendant also impeaches the official integrity of the notary public who took the acknowledgment of the deed. He testifies that the notary was not present at the time, and never took the acknowledgment of the deed. These and other positions of defendant make it very difficult to accept his version of the affair.

The fact that complainant allowed defendant to remain on the premises so long without payments, and without enforcing his rights in the contract, casts something of a shadow over his testimony; but it is somewhat relieved by his explanations. We think, upon the whole record, complainants have established their case, and are entitled to the relief which the trial court granted.

Some point is made concerning the description of the premises in the deed. The deed described 80 acres, instead of 100 acres. Complainant claims that it was intended to convey the entire farm. No effort, however, was made to correct the description. Inasmuch as the decree is effective only as against the 80 acres, no harm appears to have resulted.

Complainant Fannie Balen, the wife of James D., was made a party complainant for the sole purpose

of ratifying certain acts of James D. in connection with the premises.

The decree will be affirmed, with costs of both courts to complainants.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.